## BRUNSWICK & WESTERN RAILROAD COMPANY *v.* ROTHCHILD & COMPANY.

The obligation of a common carrier to deliver goods to the person to whom they have been consigned is fully discharged when it delivers them to the duly authorized agent of the consignee.

Argued January 22, — Decided March 3, 1904.

Trover. Before Judge Spence. Worth superior court. July 6, 1903.

*D. H. Pope* and *Perry & Tipton,* for plaintiff in error, cited *Ga. R.* 14/278; 37/693; 40/330; 99/482; 87/100; 96/795; 111/763; 113/1158; 114/677.

*Claude Payton,* contra, cited 4 Lawson's R. & P. §§ 1822, 1826, 1830, 1837; 5 Am. & Eng. Enc. L. 192–7, 209–10; *Ga. R.* 58/574; 87/100, 333; 93/813; 111/40; 73/472; 117/393; Civil Code, § 2286.

FISH, P. J. D. Rothchild & Company brought an action of trover, in the county court of Worth county, for the recovery of a box of dry goods, alleged to have been delivered to the railroad company for the purpose of being delivered by it to J. H. Ford, at Ty Ty, Ga. The petition alleged that the defendant "did convert said property to its own use and benefit, by neglecting to deliver to said Ford said personalty; also refusing to deliver said personalty to this petitioner, who is their bailor, after this petitioner had demanded said property, and before said bailor (?) had delivered said personalty to the consignee, the said J. H. Ford."

The goods were alleged to be of the value of $39.50, and upon the trial in the county court judgment was rendered in favor of the plaintiffs for $37.75 and interest. The defendant carried the case by certiorari to the superior court, the petition for certiorari alleging, among other things, that the judgment was contrary to law and the evidence and without evidence to support it. Upon the hearing in the superior court the certiorari was overruled; whereupon the plaintiff in certiorari excepted.

Irrespective of the other questions made by the petition for certiorari, the certiorari should have been sustained, upon the ground that the judgment was without evidence to support it. The evidence upon the question of the delivery of the goods to the consignee was as follows:　J. H. Ford, introduced by the plaintiff, testified:　"I know of the shipment of the goods. I never received them from the Brunswick & Western R. R. Co. They were not my goods, I never ordered them. My son, E. M. Ford, received them ; he bought them, and he received them from the railroad company. He received them for me. When the goods arrived, Eugene came to me and informed me that the box of goods was there, marked to me, and got money to pay the freight on them, and said he was going to take them out. I never told him to, nor not to. I knew he was going to get them. I never notified the agent not to deliver them to him. They were not put in my store, they were put in Eugene's store. I never got the benefit of them. Eugene did. Eugene is my son. He has been around my store for many years. He has authority to and does receipt for goods consigned to me, . . and has been doing so for many years. I have always ratified his acts in this particular. The company always delivered to him for me, when he called for my goods, and I approved it; they had done so for many years; it was our custom. . . Never have given written orders to the railroad company to deliver any of my freight to E. M. Ford, my son Eugene. Did not tell them orally to deliver this box; do not remember that I ever gave the company verbal authority to deliver any freight consigned to me; do not say that I have not done so. They knew to do so, as it was my custom to have them do so." E. M. Ford testified:　"J. H. Ford is my father. I have worked for him, in and around his store, for many years, some ten or twelve years. During all this time I have paid freight on his

606  BRUNSWICK RAILROAD CO. *v.* ROTHCHILD.  (119

goods consigned to him, and have receipted for same to the Brunswick & Western R. R. Co.    Have also attended to shipping off his freight.    I had authority from him to do so, it was not written authority, he just had me to do so, and it was the custom for me to receive and receipt for this freight, and the Brunswick & Western R. R. Co. knew I had the right to do so.    I received this box of freight, consigned from David Rothchild & Co. to J. H. Ford, Ty Ty, Ga., on Aug. 3rd, 1900.    I received for myself; it was my goods.    The railroad agent did not know I was receiving it for myself.    I did not tell them so; I did not tell them they were my goods. . .  I had not been dealing in dry goods at that time and do not do so now but little.    I now work for my father when he wants me to, and was doing so when I received the box of goods in question from the railroad company."    This witness further testified that, at the time he got the goods, he signed a receipt for them as follows:   " J. H. Ford — E. M. F., " and this receipt was then introduced in evidence.

It needs no argument to demonstrate that this evidence clearly showed a delivery by the defendant railroad company of the goods to the consignee, J. H. Ford, through his duly authorized agent, E. M. Ford.    Upon such delivery, the responsibility of the railroad company for a delivery of the goods to the consignee ceased.    The evidence showed not only that E. M. Ford had a general authority from his father, J. H. Ford, to receive from the railroad company any freight consigned to him, but we think it also showed an implied special authority to receive this particular box of goods.    J. H. Ford himself recognized this; for while he testified that he did not receive the goods and that his son, E. M. Ford, did, yet, in the same connection, he testified that the latter received the goods from the railroad company for him.    Of course, it made no difference who bought the goods from the consignors, or who claimed and appropriated them after they were delivered by the railroad company to the consignee.    The question was, to whom did the railroad company deliver them; and, as we have seen, the delivery was to J. H. Ford, the person to whom the plaintiffs had consigned them.    It is needless to cite cases to show that the long and unbroken course of dealing between the railroad company and J. H. Ford, in reference to the delivery of goods consigned to the latter, authorized the railroad company to

regard and accept E. M. Ford as the duly authorized agent of J. H. Ford to receive the delivery of these goods, when J. H. Ford did not deny, but, on the contrary, acknowledged this. The evidence demanded a judgment in favor of the defendant, and the judge of the superior court erred in overruling the certiorari.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*