SPEARS *v*. MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered June 8, 1931.

*W. H. Glover* and *D. D. Glover,* for appellant.

*R. E. Wiley* and *Richard M. Ryan,* for appellee.

SMITH, J. This is a suit to recover the value of a skating rink shipped by L. Newton, in the name of J. O. Spears, as consignor, to J. O. Spears, as consignee, from Fulton to Amity (both of which places are in this State) which was destroyed by fire at 1:15 A. M. on February 28, 1930, while the rink was still in the car in which it had been shipped over the road of the defendant railroad company.

Newton and Spears, who joined as plaintiffs in the suit, alleged and offered testimony to the effect that Newton sold the rink to Spears for $3,500, its value, and that a cash payment was made upon the sale and delivery of the property. That the rink was so constructed that it could be taken down in sections eight feet long and four feet wide, and that it was loaded in its knocked down

condition in one of defendant's cars at Fulton for shipment to Amity on February 21, 1930, upon which date a bill of lading was issued by the defendant railroad company. The bill of lading, as issued, contained no directions as to the manner or place at which notice should be given to the consignee of the arrival of the car. Testimony was offered, however, to the effect that the shipping agent was directed to insert in the bill of lading a direction to notify Spears at Gurdon, which was his place of residence, but this fact was denied by the agent.

The car was delivered at Amity and placed upon a sidetrack near the depot used for unloading cars at 9 :45 A. M., February 24. The agent at Amity testified that he did not know Spears, the consignee, or his place of residence, but that he mailed, at the postoffice in Amity on February 24, a letter containing notice of the arrival of the car addressed to Spears at Amity, which letter contained the car initials and number, the point of shipment, and its contents, in a stamped envelope bearing the return address of the railroad company. This letter was never delivered and in due course was returned to the agent at Amity, who exhibited it at the trial from which this appeal comes.

Plaintiffs sought to excuse their delay in unloading the car upon the grounds (1) that the consignee had no notice of its arrival, and (2) that during the three days preceding the fire, the weather was such that the rink could not be unloaded without damaging it. Upon this last issue plaintiff's testimony was to the effect that so much rain fell during this time that the rink would have been ruined had it been unloaded, as it was constructed of high grade maple, and when its sections were put together it was forty by ninety feet, the sections being put together in grooves, which were fastened to make the entire floor smooth and level, and, had it become wet, it would have warped, which would have destroyed its value, as it had to be perfectly level to be adapted to the use for which it was constructed. When the floor had

been put together, it was covered by a heavy canvas tent which protected it from the rains.

Numerous instructions were asked and given, while others were refused, but we do not set them out, as the instructions which will be discussed present the questions of fact and of law involved in the case.

The suit was defended by the railroad company upon the theory that the car was not unloaded within the 48 hours allowed by law for that purpose after notice of its arrival had been given, and that its liability thereafter was not that of a carrier, but that of a warehouseman, and as there was no evidence of negligence on its part causing the fire it was not liable for the destruction of the rink.

The question of the negligence of the railroad company was submitted to the jury in a number of instructions, which told the jury to find for the plaintiffs if the fire resulted from the negligence of the defendant railroad company. The evidence on this issue was to the effect that the car in which the rink was shipped was in good condition and properly sealed, and that the seals were inspected both morning and evening while the car was at Amity before the fire and was found upon each inspection to be intact. The car was destroyed by fire as well as the rink, and when the fire was discovered it was observed that a door of the car had been forced open for about six to ten inches and that the fire had originated near the door in the middle of the car. It was shown also that the last train to pass preceding the fire went by at 3:30 P. M. on the 27th, and that the engine of this train was an oil burner. This testimony supports the finding that the fire was not caused by the negligence of the defendant railroad company.

All the instructions given by the court declared the law to be that the consignee was under no duty to unload the rink in the rain, and that the "free time," during which the obligation of the railroad company was that of a carrier and not that of a warehouseman, was not to

be reduced in so far as the delay in unloading was caused by the condition of the weather. It is insisted, however, that the undisputed testimony shows that the rink could not have been unloaded on account of the rain, and that this issue should not therefore have been submitted to the jury, and that the court should have declared, as a matter of law, that the consignee's "free time" had not expired, and that the railroad company's liability as a common carrier had not terminated. We are unable, however, to say that the testimony did not present the issue whether the condition of the weather was responsible for the delay in unloading.

The questions of fact in the case were resolved by the jury in favor of the defendant railroad company, as is reflected by the verdict which was returned in its favor.

The most serious question in the case is presented by an instruction numbered 6-A requested by the defendant, which was modified by the court and given as modified. The modification consists in the addition of the phrase which is inclosed within the parenthesis. It reads as follows: "No. 6-A. You are instructed that if you find and believe from the evidence that the plaintiffs did not unload the shipment or skating rink from said railroad car after the 48 hours' free time allowed them (or were not hindered from unloading same by the rains during the 48 hours' free time) after the notice had been placed in said mail or postoffice at Amity, if you find that such notice was proper notice, then you are told that the plaintiff cannot recover, and you should so find, unless they have proved by a preponderance or a greater weight of the testimony that the fire in question and damage therefrom was caused by the negligence of the defendant."

The plaintiffs made specific objection to this instruction, pursuant to which they now insist that the instruction is contrary to § 903, Crawford & Moses' Digest. This section appears as § 8 of act 193 of the Acts of 1907 (Acts 1907, p. 453), entitled "An Act to

regulate freight transportation by railroad companies doing business in the State of Arkansas." This section deals with the notice which a carrier is required to give a consignee of the arrival of a shipment and reads as follows: "§ 903. Legal notice, as referred to in this act, may be either actual or constructive. Where the consignee or his agent is personally served with the notice of the arrival of freight at or before 6 P. M. of any day, free time begins at 7 o'clock A. M., on the day after such notice has been given. Constructive notice referred to consists of posting notice by mail to consignee. Where this mode of giving notice is adopted, there shall be 48 hours additional free time; provided, however, that when any case where notice of arrival is given by mail that said notice shall be by registered letter, that notice shall date from the receipt of said registered letter."

Now it was admitted at the trial that the letter addressed to Spears was not registered, and it is insisted that, upon this admission being made, the court should have charged the jury, as a matter of law, that the consignee had no constructive notice of the arrival of the car, and that therefore the liability of the railroad company at the time of the fire was that of a carrier, and not that of a warehouseman. It is undisputed that the first actual notice of the arrival of the car which the consignee had was obtained by him on Thursday morning, February 27, which was the day before the fire, and that this notice was obtained in a conversation over the telephone between the consignee and the railroad company's agent at Amity. So therefore, if the unregistered letter was not constructive notice of the arrival of the car, the consignee did not have notice, because the "free time" had not expired when the fire occurred.

The case of *Arkadelphia Milling Co.* v. *Smoker Merchandise Co.*, 100 Ark. 37, 129 S. W. 680, discusses the question of the time when liability of a carrier as such ceases. It was there said: "The liability of the common carrier ceases with delivery of the goods at the

point of destination according to the directions of the shipper, or according to the usage and custom of the trade at such place of destination. This delivery may be actual, or it may be constructive; and in either case the liability of the carrier terminates with such delivery. An actual delivery of goods is made when the possession is turned over to the consignee or his duly authorized agent, and a reasonable time has been given in which to remove the goods. When such delivery is thus made, the carrier is fully discharged from further liability. *Southern Exp. Co.* v. *Everett*, 37 Ga. 688; *Brunswick & W. Ry. Co.* v. *Rothchild*, 119 Ga. 604. To constitute constructive delivery, the carrier must give notice to the consignee or his duly authorized agent, if that is at all practicable, of the arrival of the goods, and must also give a reasonable opportunity and time thereafter for the consignee or his agent to remove same. When that is done, the liability of the carrier is terminated, whatever its liability may otherwise be.''

Was there sufficient notice of the arrival of the car? It must be conceded that there was not, under the provisions of § 903, Crawford & Moses' Digest, set out above.

We are of the opinion, however, that the requirement of this section that constructive notice be given by registered letter has been abrogated by subsequent legislation on the subject and by regulations approved pursuant to such subsequent legislation by the Arkansas Railroad Commission.

An act was passed at the 1921 session of the General Assembly enlarging and defining the powers of the Commission (Act 124, General Acts 1921, p. 177).

By § 5 of this act it is provided that ''the jurisdiction of the Commission shall extend to and include all matters pertaining to the regulation and operation of all common carriers.''

By § 7 (p. 187) of the act it is provided that no common carrier shall modify, change, cancel or annul any rate except after thirty days' notice to the public and to

the Arkansas Railroad Commission, "which notice shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares or charges shall go into effect; provided, the particular regulatory body having jurisdiction of such matter under this act may enter an order prohibiting such person, firm or corporation from putting such proposed new rates into effect pending hearing and final decision of the matter by the said regulatory body, and whenever there shall be filed with the said regulatory body any schedule proposing a change in any rates, charges or regulations, the regulatory body shall have, and it is hereby given, authority, either upon complaint or upon its own initiative, upon reasonable notice, to enter upon a hearing concerning the propriety of such rate, charge or regulation; and pending such hearing, and the decision thereon, (the) such regulatory body upon filing of such schedule, or after such schedule should be filed, and delivering to the carrier or carriers or public service corporations affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate or charge; and after full hearing, whether completed before or after the rate, charge or regulation goes into effect, the said regulatory body may make such order in reference to such rate, fare, charge or regulation as shall be deemed proper and just."

The act of 1921 repeals all laws in conflict with it.

Pursuant to the provisions of this act the Tariff Bureau of the American Railway Association filed with the Arkansas Railroad Commission "Freight Tariff No. 4-J Naming Car Demurrage Rules and Charges Applying at all points on Railroads parties hereto."

It does not appear whether these regulations were investigated or otherwise suspended by the Arkansas Railroad Commission, but the following certificate was offered in evidence at the trial from which this appeal comes:

"CERTIFICATE.

"This is to certify that American Railway Association Freight Tariff 4-J, I. C. C. No. 2192, Arkansas Railroad Commission No. 17, issued June 26, 1929, effective August 1, 1929, also Supplement No. 1 to said tariff issued July 24, 1929, effective September 1, 1929, and issued by B. T. Jones, agent, are on file with the Arkansas Railroad Commission." This certificate was attested by the secretary under the seal of the Commission.

The effect of this certificate is that, whether investigated or otherwise suspended, as the Railroad Commission had authority to do under the statute quoted, the regulations became effective on September 1, 1929, and were in force at the time of the shipment out of which this litigation arose. Certain later regulations were also filed with the Arkansas Railroad Commission and approved by that body, but they do not conflict with or change the regulation in Freight Tariff 4-J, which reads as follows:

"Rule No. 4, Subject Notification. Section A.—Except as otherwise provided in sections B, C, or D of this rule, notice of arrival shall be sent or given consignee or party entitled to receive same by this railroad's agent, in writing, or, in lieu thereof, as otherwise agreed to in writing by this railroad and consignee, within twenty-four hours after arrival of car and billing at destination, such notice to contain car initials and number, point of shipment, contents and, if transferred in transit, the initial and number of original car. When address of consignee does not appear on billing, and is not known, the notice of arrival must be deposited in United States mail, inclosed in a stamped envelope bearing return address, same to be preserved on file, if returned. An impression copy shall be retained, and when notice is sent or given on a postal card the impression shall be of both sides. (See Rule 3, Sections B and C). In case a car subject to rule 3, section C, paragraph 1, is not placed on public delivery track within twenty-four hours after

notice of arrival has been sent or given, notice of placement shall be sent or given to consignee.''

This rule recognizes the right to contract for other or additional notice than that of a notice deposited in the United States mail, inclosed in a stamped envelope, bearing the return address of the carrier, but it also recognizes such notice is sufficient in the absence of a contract for other or additional notice.

The issue whether such additional notice was requested was submitted to the jury and is concluded by the verdict of the jury.

We conclude therefore that the jury was warranted in finding that notice was given which conformed to the requirements of the law, and that the consignee did not within 48 hours thereafter claim his freight and obtain its delivery, and, this being true, the liability of the railroad company was thereafter that of a warehouseman, and the railroad company was then liable only for loss or damage which resulted from its negligence.

An objection was made to an instruction which told the jury that the plaintiffs could not recover for the loss of the rink by fire unless it was shown by the testimony that they were the owners of the rink. The objection was made to this instruction that it submitted an issue not raised by the testimony. There appears, however, to have been testimony which cast such doubt upon the plaintiff's ownership as to present this issue.

Certain other errors were assigned, which we think are not of sufficient importance to require discussion.

Upon a consideration of the whole case we find no error in the record, and the judgment must therefore be affirmed, and it is so ordered.